UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
ZDZISLAW PCHELKA AND K. P., A MINOR UNDER
THE AGE OF 18, BY HIS FATHER AND NATURAL
GUARDIAN, ZDZISLAW PCHELKA,

CV 15 Civil Action No. 1042

**COMPLAINT**
**JURY TRIAL DEMANDED**

Plaintiff(s),

-against-

THE CITY OF NEW YORK, POLICE COMMISSIONER
RAYMOND KELLY, FIRST DEPUTY COMMISSIONER
RAFAEL PINEIRO, CHIEF OF DEPARTMENT JOSEPH
ESPOSITO AND JOHN DOE POLICE OFFICERS.

**GOLD, M.J.**

Defendants.
--------------------------------------------------------------------X

Plaintiffs, by their attorneys, Bader Yakaitis & Nonnenmacher, LLP complaining of the Defendants, respectfully sets forth and allege as follows:

PRELIMINARY STATEMENT

1. This is a Civil Rights action in which the Plaintiffs seek relief for Defendants' violation, under color of state law, of their rights, privileges and immunities secured by The Civil Rights Act of 1871, 42 U.S.C. Sections 1983 and 1985, the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of New York.

2. The Plaintiffs bring this action under 42 U.S.C. Sections 1983 and 1985 and related state laws seeking compensatory and punitive damages and attorney's fees under 42 U.S.C. Section 1988 for the Defendants' violation of their rights afforded by the United States and New York Constitutions and under the laws of the State of New York.

3. Defendants, the City of New York, the individually named Defendants and John Doe Police Officers, the exact number which is unknown at this time, acting individually and in their official capacities, jointly and severally, violated plaintiffs' rights to be free from unreasonable seizures and did cause Plaintiffs to be falsely arrested, falsely imprisoned, assaulted and battered.

4. The individually named defendants and "John Doe" Defendants being employees of the City of New York violated Plaintiffs' Civil Rights, caused them serious personal injuries, emotional harm and deprived them of their liberty.

5. The incident occurred on December 6, 2013 within the intersection of McGuiness Boulevard and Nassau Avenue in Brooklyn, New York.

## THE PARTIES

6. At all times hereinafter mentioned the plaintiff K.P. was an infant (Sixteen years old) and resided with his father and natural guardian, Zdzislaw Pchelka at 167 Russell Street, Brooklyn, N.Y.

7. At all times hereinafter mentioned, the plaintiff Zdzislaw Pchelka was the father and natural guardian of K.P. and resided with him at 167 Russell Street, Brooklyn, N.Y.

8. The Plaintiffs are and were at all times relevant herein residents of the State of New York.

9. Defendant the City of New York is a Municipal entity created and authorized under the laws of the State of New York and is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible.

10. The New York City Police Department is an agency and/or department of the City of New York and acts on its behalf in the area of law enforcement.

11. Defendant Raymond Kelly was the Police Commissioner of the New York City Police Department at the time of this incident and as such was a superior and supervising officer of the police officers involved in the incidents described in this complaint.

12. Defendant Rafael Pineiro was the First Deputy Commissioner of the New York City Police Department at the time of this incident and as such was a superior and supervising officer of the police officers involved in the incidents described in this complaint.

13. Defendant Joseph Esposito was the Chief of the Police Department at the time of

2

this incident and as such was a superior and supervising officer of the police officers involved in the incidents described in this complaint.

14. The JOHN DOE Defendants were police officers assigned to a Precinct within the New York City Police Department.

15. John Doe, Commanding officer was a supervising officer at this Precinct when this incident occurred and is a superior officer of the officers involved in this incident.

16. John Doe, Commanding officer was a supervising officer at this Precinct when this incident occurred and is a superior officer of the officers involved in this incident.

17. John Doe Police Officers assigned to a Precinct within the City of New York participated in the events described in this complaint.

18. Defendants Raymond Kelly, Rafael Pineiro and Joseph Esposito and the John Doe Supervisors are responsible for the practices, policies and customs of the New York City Police Department, as well as for the hiring, screening, training, supervising, controlling, retaining and disciplining of the persons employed by the New York City Police Department.

19. Defendant Raymond Kelly is and was, at all times relevant to this complaint, the Commissioner of the New York City Police Department and is a final policy maker for purposes of the Police Department's policies, practices and customs.

20. As Commissioner of the New York City Police Department, Raymond Kelly was, at all times relevant to this complaint, responsible for the practices, policies and customs of the Police Department and its precincts and was responsible for the hiring, screening, overseeing, training, supervising, controlling, retaining and disciplining of officers who worked within the precincts.

21. As First Deputy Commissioner, Rafael Pineiro was a commanding officer of the various precincts and was a final policy maker for purposes of the precincts policies, practices and customs.

3

22. As First Deputy Commissioner, Rafael Pineiro was at all times relevant to this complaint responsible for the practices, policies and customs of the New York City Police Department and its precincts and was responsible for the hiring, screening, overseeing, training, supervising, controlling, retaining and disciplining of Officers who worked at precincts.

23. Chief of Department, Joseph Esposito was a commanding officer of the New York City Police Department and was a final policy maker for purposes of its precinct's policies, practices and customs.

24. As the Chief of Department, Joseph Esposito was at all times relevant to this complaint, responsible for the practices, policies and customs of the New York City Police Department and its precincts and was responsible for the hiring, screening, overseeing, training, supervising, controlling, retaining and disciplining of detectives who worked within the precincts.

25. John Doe Defendants were at all times mentioned superior officers at the Precinct involved and at all times relevant to this complaint were responsible for the practices, policies and customs of the New York City Police Department and the Precinct involved and was responsible for the hiring, screening, overseeing, training, supervising, controlling, retaining and disciplining of Officers who worked at this Precinct.

26. On December 6, 2013 The City of New York employed unknown "John Doe" Police Officers who were assigned to a Precinct within The City of New York.

27. Defendants John Does are, or were at all times relevant to this complaint, employed by the City of New York as police officers, supervisors, and/or commanding officers assigned to a Precinct within the City of New York.

28. These John Doe Defendants include individuals who conspired to and/or acted in concert and/or did engage in the violation of Plaintiffs' rights described herein, or who failed to protect the Plaintiffs from violations of their constitutional rights.

4

29. On December 6, 2013 the City of New York employed the aforementioned John Doe police officers who were agents, servants and/or employees of the New York City Police Department.

30. The individually named Defendants and yet to be named John Doe Defendants were at all times mentioned acting under color of state law, to wit, under color of the statutes, ordinances, customs, policies and/or practices of the State of New York and/or City of New York.

31. Defendants were also acting within the scope of and in furtherance of their employment with the City of New York and the New York City Police Department.

32. At all times relevant herein, each of the individually named Defendants and the yet to be named John Doe Defendants acted under color of law in the course and scope of his or her duties and functions as an agent, employee, servant and/or officer of The City of New York and/or New York City Police Department in engaging in the conduct described herein.

33. At all times relevant herein, the individually named Defendants and the yet to be named John Doe Defendants have acted for and on behalf of the City of New York and/or the New York City Police Department, and incidental to the lawful pursuit of their duties as officers, agents, employees and/or servants of the City of New York and/or New York City Police Department.

34. At all times relevant herein, the individually named Defendants violated clearly established constitutional standards under the First, Fourth, Fifth, Eighth and Fourteenth Amendments of which a reasonable police officer and/or public official under his or her respective circumstances would have known to be so violative.

35. Plaintiffs seek compensatory and punitive damages. Plaintiffs also seeks an award of attorney fees and costs, and for such other and further relief as the court deems just and proper.

## JURISDICTION

36. The Court has jurisdiction over Plaintiffs' claims under 42 U.S.C. Sections 1983 and 1985 pursuant to 28 U.S.C. Section 1331 and Section 1342(3).

37. The jurisdiction of this Court is invoked pursuant to the provisions of Title 28, United States Code Section 1343(3) and (4), this being a suit in equity which is authorized by law, Title 42, United States Code, Sec. 1983, to be brought to redress the deprivation under color of state law, statute, ordinances, regulations, custom or usage of rights, privileges, and immunities secured by the Constitution and laws of the United States or by any Act of Congress providing for equal rights of citizens. The rights here sought to be redressed are rights guaranteed by the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States and Title 42, United States Code, Sections 1981, 1983 and 1985 as hereinafter more fully appears and The Constitution of the State of New York.

38. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. Section 1367.

## VENUE

39. Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. Section 1391(b)(2), in that this is the judicial district in which the events giving rise to this claim occurred.

## PRE CONDITIONS TO PLAINTIFFS' STATE LAW CLAIMS

40. A notice of claim was filed by the Plaintiffs on February 20, 2014 with respect to their causes of action which occurred on December 6, 2013 setting forth the time when, the place where and the manner in which this incident occurred.

41. The Plaintiff Zdzislaw Pchelka testified at a statutory hearing in compliance with Section 50H of the General Municipal Law on April 25, 2014. Defendants waived the hearing of K.P. More than thirty (30) days have elapsed since the presentation of these claims and the Defendants have not requested a physical examination of the Plaintiffs pursuant to General Municipal Law Section 50H, the same having been waived by the Defendants.

6

48. The operator of the van then exited the van and angrily approached the plaintiffs.

## JURY DEMAND

42. Plaintiffs demands a trial by jury in this action on each and every one of their claims pursuant to the seventh amendment to The United States Constitution and Fed. R. Civ. P. 38.

## FACTUAL BACKGROUND

43. On December 6, 2013 while the adult plaintiff was crossing within the cross-walk of McGuiness Boulevard with his son, he was stuck by a black van.

44. This motor vehicle was being operated by an off duty police officer.

45. The operator of the black van made a left turn on to McGuiness Boulevard and then struck the plaintiff pedestrian.

46. As a result of the contact, the adult plaintiff was knocked to the ground.

47. Following the contact, the operator of the van cursed at the plaintiff and his son.

48. The operator of the van then exited the van and angrily approached the plaintiffs.

49. The operator of the van took plaintiff's groceries from him and threw them at his infant son.

50. The operator of the van then assaulted and battered the plaintiff and threw him on top of the hood of his van.

51. While the plaintiff was bent over on the hood of the operator's van, the operator of the van continued to assault and batter the plaintiff.

52. The operator of the van then violently handcuffed the plaintiff while he was bent over the hood of the van.

53. The operator of the van then physically knocked the plaintiff down to the street and dragged him to the sidewalk where the plaintiff was further assaulted and battered.

54. At some point in time, other police officers arrived at the scene.

55. The plaintiff was in handcuffs for approximately forty five minutes.

56. One of the responding officers removed the handcuffs that were placed on the plaintiff.

57. After another twenty minutes the plaintiffs were instructed to leave.

58. As the adult plaintiff attempted to leave, he was further assaulted and battered by the operator of the van, an off duty police officer.

## AS AND FOR A FIRST CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFFS FOR FALSE ARREST

59. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "58" above, as if fully set forth at length here.

60. The Adult plaintiff was placed in handcuffs and illegally restrained.

61. That both plaintiffs were falsely arrested and unlawfully restrained.

62. The Plaintiffs were arrested by John Doe, Police Officers without probable cause and without a warrant.

63. The aforesaid arrest was caused by the defendants, its agents, servants and employees, including but not limited to the police officers without a warrant and without any reasonable cause or belief that Plaintiffs were in fact guilty of any crime.

64. That the aforementioned officers intended to confine Plaintiffs; Plaintiffs were conscious of the confinement; Plaintiffs did not consent to the confinement and the confinement was not otherwise privileged.

65. That by reason of this false arrest the Plaintiffs were subjected to great indignities, humiliation and ridicule and were greatly injured in their credit and circumstances and were prevented and hindered from performing and transacting their necessary affairs and were caused to

suffer much pain in both mind and body.

66. The aforementioned police officers intentionally and without the right to do so, arrested the Plaintiff who was aware of the arrest and did not consent to it.

67. Plaintiffs' arrest was unlawful and was made without justification.

68. Based on the facts and circumstances presented, a reasonably prudent person would not believe that Plaintiffs committed a crime.

69. As a result of the foregoing, the plaintiff was damaged in a sum in excess of the jurisdictional limits of all lower courts which otherwise have jurisdiction.

## AS AND FOR A SECOND CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFFS FOR FALSE IMPRISONMENT

70. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "69" above, as if fully set forth at length herein.

71. That plaintiffs were unlawfully and falsely imprisoned.

72. During this unlawful arrest the plaintiffs were seized and confined to the intersection.

73. That plaintiffs' unlawful and illegal imprisonment caused them grievous harm.

74. The defendants intended to confine the Plaintiffs.

75. The Plaintiffs were conscious of their confinement.

76. The Plaintiffs did not consent to the confinement.

77. The confinement was not privileged.

78. By reason of the aforementioned, the Plaintiff suffered physical harm, great mental anguish and was deprived of their constitutional rights.

9

## AS AND FOR A THIRD CAUSE OF ACTION
## ON BEHALF OF THE PLAINITFFS FOR ASSAULT

79. Plaintiffs repeats and reiterate all of the allegations contained in paragraphs "1" through "78" as if fully set forth herein.

80. On December 6, 2013 in the course of being falsely arrested, the Plaintiffs were assaulted by the aforementioned agents, servants, and/or employees of the defendants The City of New York and The New York City Police Department.

81. During the course of this unlawful arrest the Plaintiffs were subjected to the excessive use of force.

82. During the course of their arrest, the aforementioned police officers intentionally placed the Plaintiffs in apprehension of imminent harm and offensive contact.

83. During the course of this unlawful arrest the Plaintiffs were the victims of police brutality.

84. During the course of their arrest, the aforementioned police officers intentionally caused the Plaintiffs to become concerned that they were about to cause their harm and that they were about to subject them to offensive contact.

85. The aforementioned officers had the real and/or apparent ability to bring about that harm and contact.

86. The Plaintiffs reasonably believed that harm and contact was about to occur.

87. By reason of the aforementioned, the Plaintiffs suffered physical harm, great mental anguish and was deprived of their constitutional rights.

## AS AND FOR A FOURTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFFS FOR BATTERY

88. Plaintiff repeats and reiterates all of the allegations contained in paragraphs "1" through "87" as if fully set forth herein.

89. On December 6, 2013 in the course of being arrested, the Plaintiffs were battered by the aforementioned police officers who were employed by The City of New York and New York City Police Department.

90. During the course of their unlawful arrest, the aforementioned police officers intentionally touched the Plaintiffs without their consent, and caused them offensive bodily contact.

91. During the course of their arrest, the aforementioned police officers used excessive force against the plaintiffs.

92. A reasonable person would conclude that the contact was offensive, it was done with the intent to harm the Plaintiffs and the contact offends a reasonable sense of personal dignity and/or was wrongful.

93. Defendants use of force was not justified and was done willfully and maliciously.

94. Defendants committed the foregoing acts intentionally, willfully and with malicious disregard for Plaintiffs' rights.

95. The Plaintiffs were the victim of police brutality.

96. Said use of excessive force deprived Plaintiffs of the constitutional right to bodily security and liberty under the Fourteenth Amendment to the United States Constitution and amounted to an unreasonable physical seizure of the Plaintiffs under the Fourth Amendment to the United States Constitution and constituted cruel and unusual treatment under the Eight Amendment

11

to the United States Constitution.

97. By reason of the aforementioned, the Plaintiffs suffered physical damages, suffered great mental anguish and was deprived of their constitutional rights.

98. As a result of the foregoing, the plaintiffs were damaged in a sum in excess of the jurisdictional limits of all lower courts which otherwise have jurisdiction.

## AS AND FOR A FIFTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFFS FOR VIOLATION OF CIVIL RIGHTS

99. Plaintiffs repeat each and every allegation contained in paragraphs "1" through "98" as if fully set forth herein.

100. The aforesaid officers of The City of New York and New York City Police Department were acting as agents, servants and/or employees of The City of New York and New York City Police Department.

101. The aforesaid officers were acting within the course and scope of their employment.

102. The aforementioned acts of each of the defendants were under color of statutes, ordinances, regulations, custom and usage of the State of New York.

103. The aforementioned acts of each of the defendants deprived Plaintiffs of the privileges and immunities guaranteed to Plaintiffs as a citizens of the United States, by amendments IV, V, VII and Section I of amendment XIV of the Constitution of the United States and by the Constitution of the State of New York.

104. As a direct and proximate result of the defendants' actions, Plaintiffs were deprived of rights, privileges and immunities secured to them under the Constitution and laws of The State of New York and The United States, including, but not limited to their rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C Section 1983.

105. The aforementioned acts of the defendants constituted cruel and unusual punishment of Plaintiffs and as such violated amendment VIII to the Constitution of the United

States and of the State of New York.

106. By reason of the foregoing, the John and Jane Doe defendants are liable to Plaintiffs pursuant to Title 42 of the United States Code, including but not limited to Sections 1981, 1983 and 1985 thereof.

107. By reason of the aforementioned the Plaintiffs suffered physical damages, suffered great mental anguish and was deprived of his constitutional rights.

### AS AND FOR A SIXTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS FOR VIOLATION OF PLAINTIFFS' CIVIL RIGHTS (MUNICIPAL LIABILITY)

108. Plaintiff repeats each and every allegation contained in paragraphs "1" through "107" as if fully set forth herein.

109. All of the acts and omissions by the named and unnamed individual police officers described were carried out pursuant to overlapping policies and practices of The City of New York and New York City Police Department which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of The City of New York and New York City Police Department.

110. Defendant The City of New York and New York City Police Department, by their policy-making agents, servants and employees, authorized, sanctioned, and/or ratified the individual police defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

111. The actions of the individual police defendants resulted from and were taken pursuant to the following de facto policies and/or well settled and widespread customs and practices of The City of New York and New York City Police Department, which were and are implemented by members of its police department:

13

(a) Members of this Precinct are encouraged and/or allowed by their supervisors to physically brutalize suspects and arrestees without consequence – i.e. without fear of reprimand, discipline or even re-training by the Department;

(b) New York City Police Officers, including this Precinct Bureau engage in systemic and ubiquitous perjury, both oral and written, to cover-up constitutional and state law violations committed against civilians by either themselves or their fellow officers, supervisors and/or subordinates. They did so and do so with the knowledge and approval of their supervisors, commanders and Police Commissioners who all:

   (i) tacitly accept and encourage a code of silence wherein police officers refused to report other officers misconduct or tell false and incomplete stories designed to cover for and/or falsely exonerate accused police officers; and

   (ii) encourage and/or fail to discipline officers for "testifying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil right violations perpetrated by themselves or fellow officers, supervisors and/or subordinates against those civilians; and

(c) The City of New York and New York City Police Department with the knowledge, approval and encouragement of Police Commissioners, fail to properly train, supervise and/or discipline officers concerning the constitutional rights of individuals in their care and custody.

112. The Defendants established a custom, policy and/or practice of encouraging, approving and/or tolerating the New York City Police Department's use of excessive force and acts of misconduct against civilians, especially those civilians who are immigrants and subsequent attempts to conceal such actions by failing to adequately train, supervise and discipline its agents, employees and officers.

113. The Defendants were deliberately indifferent to the use of improper procedures in the detention and arrest of civilians, especially those of immigrants and established a custom, policy and/or practicing of encouraging, approving and/or tolerating the use of said improper procedures by the New York City Police Department and subsequent attempts to conceal such actions by failing to adequately train, supervise and discipline its agents, employees and officers.

14